## In re EVANS et al.

(District Court, W. D. Pennsylvania. July 20, 1916.)

### No. 8007.

1. PLEDGES ⬅19—COLLATERAL—RIGHTS OF PARTIES.
   Where two members of a firm executed a note, pledging collateral for that obligation or any other of their obligations, the collateral could not be used in discharging a note signed by all three members of the firm, and on their bankruptcy any surplus after payment of the note should be paid to the trustee in bankruptcy.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig. ⬅19.]

2. PLEDGES ⬅19—COLLATERAL—LIABILITY.
   Where collateral is pledged to secure a firm obligation, such collateral cannot be used in paying a note signed by the members of the firm as their joint individual obligation, and in case of bankruptcy, the holder of the collateral, holding a joint obligation of the members of the firm, must deliver to the trustee in bankruptcy any surplus.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig. ⬅19.]

3. PARTNERSHIP ⬅173—PARTNERSHIP OBLIGATIONS—INTENTION.
   Whether a note is a partnership obligation or the individual obligation of those partners signing it depends on the intention of the parties.
   [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 304, 305; Dec. Dig. ⬅173.]

4. PARTNERSHIP ⬅217(3)—OBLIGATIONS—EVIDENCE—SUFFICIENCY.
   Where on bankruptcy of a firm and the members thereof a creditor who held firm notes and also notes signed by the members as individuals contended that a note by the members individually was a partnership obligation, and so collateral pledged for payment of partnership obligations might be used in paying such note, held, under the evidence, that the note was a firm note.
   [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 425; Dec. Dig. ⬅217(3).]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. EVIDENCE ⬪⬪⬪396—PAROL EVIDENCE RULE—ADMISSIBILITY.
    Where a bank which received collateral prepared the written pledge, it
cannot, after bankruptcy of the pledgors, vary the instrument by in-
definite parol testimony.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1754, 1755;
Dec. Dig. ⬪⬪⬪396.]

In Bankruptcy. In the matter of the bankruptcy of John Kuhn Evans, James Evans, and Alan Stotler Evans, individually and partners doing business as Evans Bros. On questions certified on the report of the referee. Referee's report confirmed.

McKee, Mitchell & Alter, of Pittsburgh, Pa., for Columbia Nat. Bank.

Sterrett & Acheson, of Pittsburgh, Pa., for receiver.

THOMSON, District Judge. The referee has certified for our opinion whether, under the facts and circumstances set forth in the report and supplemental report and opinion of the referee, a certain claim of the Columbia National Bank, amounting to $1,649.08, should be allowed against the bankruptcy estate of Evans Bros.

The material facts of the case are these: The partnership of Evans Bros. consisted of three brothers, John K. Evans, James Evans, and Alan S. Evans. At the time of the bankruptcy of the Evanses, both as individuals and partners, the Columbia National Bank held two overdue partnership obligations signed "Evans Bros.," each note being secured by certain collateral.

The bank also held three other notes: First. A collateral note, dated October 22, 1915, at four months, for $15,000, signed by James Evans and Alan S. Evans, pledging 100 shares of National Bank of McKeesport stock "as collateral security for the payment of this and all other liabilities of the undersigned to the holder hereof, now or hereafter due, and now or hereafter existing." Second. A promissory note signed by John K. Evans, James Evans, and Alan S. Evans, dated September 10, 1915, at 90 days, for $4,500. This note was unsecured. Third. A demand note of $600, signed by John K. Evans. The two notes of Evans Bros. were paid off by a conversion of a part of their collateral, and there was left as a residue from said collateral a bond of the Canonsburg & Washington Railway Company for $1,000 and the sum of $56.10 in cash. On April 13, 1916, the collateral attached to the $15,000 note was sold for a price netting $17,366.50. The bank, it appears, attempted, first, to pay out of this fund the $4,500 note, and then to apply the residue in payment pro tanto of the $15,000 note, leaving a balance against the estate of Evans Bros. in this case, and its position is that it is entitled to receive the bonds of the railway company and the small amount of cash as security for the balance claimed in its proof of debt. Upon the petition of the receiver, an order of court was made, directing the bank to turn over this bond and small cash balance to the receiver, subject to any credit that the bank might have against the same. It is the position of the bank that the securities deposited with the $15,000 note are collateral also for the $4,500 note, and that the bank was justified in crediting enough

of the proceeds of sale of this collateral to the discharge of the latter note, that the balance due the bank is evidenced by the $15,000 note, and that the latter, under the circumstances of the case, is a partnership obligation.

[1] What is the result if the $15,000, note is what it purports to be, an individually joint obligation of James and Alan S. Evans? Can the collateral pledged for the payment of this joint obligation be used in the payment of the $4,500 note given by the three parties? This question must be answered in the negative, under the authority of Torrance v. Third National Bank of Pittsburgh, 210 Fed. 806, 127 C. C. A. 356. The court there, in a carefully considered opinion, held that the residue of property hypothecated by two joint obligors could not be applied in payment of an individual liability of either of the joint obligors, although the collateral note was both joint and several in form. It is true that in that case the collateral pledged was joint, while in this case the stock was owned by the pledgors individually, 50 shares each. But this fact does not change the result. The application which can be made of the collateral must depend on the terms of the collateral pledge. The parties owning the securities might have made any application of them which they mutually saw proper to make, without regard to the question of ownership as between themselves. But the note in question created a joint liability and no other, and the pledge of the stock was "for the payment of this and all other liabilities of the undersigned." The Torrance Case has distinctly ruled that the "other liabilities of the undersigned" are of the same character as the joint liability; in other words, that the securities were pledged only for the joint liability of the two makers.

[2] Under the terms of the pledge in this case, therefore, the collateral could not be applied to the payment of the $4,500 note. Is the case in any manner changed, if in fact the $15,000 note was a partnership obligation? Manifestly not. If a partnership obligation, the bank could not apply, much less first apply, the collateral to the individual note of the three parties. It would have to be applied to the payment of the note for which it was pledged, and, being in excess of the note, that note would be paid in full; and, as this instrument is the only one by virtue of which the bank could ever assert any right or claim to the residuary collateral to the Evans Bros. notes (the $1,000 bond and $56.10 in cash), that claim of the bank must fail.

[3, 4] I agree with the referee that the evidence is not sufficient to show that the note was in fact a partnership obligation. In this case there was no uncertainty as to the form of executing paper when the firm wished to create a partnership obligation. In such case, the notes were signed "Evans Bros." It does not appear that any other method of signing was ever used by the firm. The bank was fully aware of this, as it held at that time several partnership notes signed "Evans Bros." It also held the joint note of the three parties composing the firm, which is conceded to have been an individual obligation. It must be assumed, prima facie, that in taking the $15,000 note, the bank was dealing with individuals. The note was neither signed in the firm name, nor did all the members of the firm join in it. There is

no evidence, either on the part of the bank or on the part of the firm or its members, that the bank in fact was dealing with the firm. The only evidence on that subject at all is that the proceeds went into the account of "Evans Bros. Special," and a little later passed into the account of Evans Bros. in another bank. This is not sufficient to make the note a partnership obligation. The question is, Was the contract with the partnership; that is, did the parties making it intend it as a partnership transaction? Alexander v. McGinn, 3 Watts (Pa.) 220. If not, the fact that the money went into the partnership funds can make no difference. But in either event, whether it be treated as an individual or a partnership transaction, the collateral pledged for its payment could not be applied to satisfy the $4,500 note.

[5] I also agree with the conclusion of the referee that the testimony of Mr. Hammond and Mr. Jennings is not sufficient to establish a contract that the McKeesport National Bank stock should be held to secure, or was to be held to secure, both of these obligations. The rather vague statements, testified to as being made by the Evanses, really amount to no more than a mistaken assumption on their part, and the bank's officers, as to what their legal rights in the matter were. For this mistake the bank is to blame. If it was to have a prior claim on the property of Evans upon its unsecured notes, it was incumbent on the bank to secure that right in accordance with the methods governing such matters. The pledge of a hundred shares of stock with the bank was in writing, and the terms of the pledge distinctly set forth. At this late day the bank, a creditor of the bankrupt estate, should not be permitted to vary the terms of that written contract by evidence so vague and unsatisfactory.

I agree with the legal conclusion of the referee as to the application of the proceeds derived from the sale of the collateral and the distribution of the balance in the hands of the bank. The report of the referee is therefore affirmed.