MOLSON'S BANK *v.* HOEKZEMA.

1. PLEDGES—BILLS AND NOTES—ASSIGNMENTS—PURPOSE OF ASSIGN-MENT.

A note assigned to a bank by the payee under a written contract that it was to secure its indebtedness to the bank could not be legally used or extended to secure the debts of another.

2. BILLS AND NOTES—RIGHT TO REPUDIATE NOTE REMAINED AS AGAINST ASSIGNEE WHERE NO CONSIDERATION SHOWN.

Where the maker of a note given for the purchase of cor-porate stock under a collateral written contract had the right to repudiate the note by losing the payments made, the same right remained as against the assignee of the note, where no consideration for the assignment was shown.

Error to Kent; Brown (William B.), J. Submitted April 5, 1927. (Docket No. 12.) Decided December 1, 1927. Rehearing denied February 14, 1928.

Assumpsit by the Molson's Bank against George Hoekzema on a promissory note. Judgment for plain-tiff. Defendant brings error. Reversed.

*Bartel J. Jonkman* (*Corwin, Norcross & Cook,* of counsel), for appellant.

*M. Thomas Ward,* for appellee.

BIRD, J. On April 11, 1922, defendant purchased 200 shares of the Great Lakes Finance Corporation, paying therefor $12.50 a share. He made a down payment of $500 and gave his promissory note for $2,000, payable in 20 months, without interest. A purchasing contract was executed cotemporaneously

[1]Pledges, 31 Cyc. p. 819; [2]Bills and Notes, 8 C. J. §§ 698, 1015.

with the execution of the note, the material part of which follows:

"I hereby subscribe for two hundred (200) shares of the capital stock of Great Lakes Finance Corporation and agree to pay therefor the price of $12.50 per share. I agree to pay for said shares as follows:    Five hundred dollars cash and balance in notes.   *   *   *
"In the event of   *   *   *   failure to complete *   *   *   payments, as above provided, or the notes above mentioned, said cash payments and all my rights to further dividends shall be forfeited and treated as liquidated damages for the nonperformance of this agreement."

A short time before the note became due, and on October 6, 1923, the Great Lakes Finance Corporation assigned the note to plaintiff bank.    The essential part of the assignment provides:

"The contracts, notes and bills mentioned below amounting to $10,549.10 and the principal and interest therein expressed to be payable, are hereby transferred to the Molson's Bank which is authorized to hold the same and the proceeds thereof as collected, as a special collateral security fund for the payment of all present or future indebtedness or liability, of the undersigned to the bank."

Defendant elected under his agreement not to make further payments, but to lose what he had paid in.    He received no stock, but did receive about $95 in dividends.    This would have been an end of the controversy had not the note been transferred to plaintiff. Plaintiff claims to be a *bona fide* holder for value. Defendant disputes this, and claims that plaintiff did not pay value for the note, and, therefore, he was entitled to make the same defense as though it had remained the property of the payee.    Plaintiff did not show upon the trial that it had paid anything for the note.    No indebtedness, present or future, of the Great Lakes Finance Corporation to plaintiff bank was shown.    In fact, it was admitted by a representative

of the bank that there was no such indebtedness. Herbert J. Smith, the attorney for the bank, and witness for it, testified as follows:

"The Great Lakes Finance Corporation itself owed the bank (Molson's Bank) no money whatever at that time nor any time prior thereto; I do not think they ever owed them any money after that time themselves. The Great Lakes Finance Corporation itself has never owed the Molson's Bank any money."

If no consideration was shown by plaintiff, defendant would have the right to make the same defense as against the payee, but plaintiff attempts to avoid this conclusion by claiming that the Gill & Fortune Lumber Company was indebted to the plaintiff bank by way of mortgage, and that the Great Lakes Finance Corporation was a stockholder of that company, and as such stockholder requested plaintiff to delay foreclosing the mortgage which it held, and that plaintiff's forbearance to foreclose the mortgage furnished a consideration for the note.

Counsel for defendant objected to this testimony, on the ground that it varied the written terms of the collateral agreement by parol evidence; that oral testimony was not admissible to show that the collateral was to be used for other purposes than those recited in the written collateral agreement. In support of their contention they cite 22 C. J. pp. 1102, 1098; *In re Wm. Hill & Sons,* 186 Fed. 569; *In re Evans,* 235 Fed. 635; *Hyde* v. *National Bank,* 115 Wis. 170 (91 N. W. 230); 10 R. C. L. p. 1046; and that although defendant was a stranger to the collateral agreement between the finance company and the plaintiff bank he is entitled to make this defense if that agreement be the basis of his defense. 3 Jones on Evidence, p. 217; *Reynolds* v. *Magness,* 24 N. C. 26; *Ransom* v. *Wickstrom & Co.,* 84 Wash. 419 (146 Pac. 1041, L. R. A. 1916A, 588); *Current* v. *Muir,* 99 Minn. 1 (108 N. W. 870).

Passing over these legal contentions, we think, if the objectionable testimony be considered, no consideration was shown by the plaintiff bank. The bank conceded, through its representative, that the relation of debtor and creditor never existed between the bank and the finance corporation after the collateral agreement was made. When the note became due the finance company was not indebted to the plaintiff bank. The Gill & Fortune Lumber Company was owing the bank on mortgage, but the fact that the finance company was a stockholder of that company would not make it liable for its debts. It was the indebtedness of the finance corporation that was involved in the collateral written agreement. The recitation in the written agreement must determine the purposes for which the collateral was given, and it could not be legally used or extended to secure the debts of another. (See authorities above cited.)

No consideration having been shown by the bank, defendant was at liberty to make the same defense under his agreement as he would have had if the original payee had sued upon the note. Defendant, under his agreement, had the right to repudiate it by losing what he had put into it, and this he elected to do. Judgment should have been directed for defendant.

The judgment of the lower court will be reversed, with costs of both courts to the defendant.

SHARPE, C. J., and FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

The late Justice SNOW and Justice STEERE took no part in this decision.