(Supreme Court, Special Term, New York County. June, 1896.)

PLEDGE—DEBTS NOT SPECIFIED IN CONTRACT.

A security may be retained only for the debt or duty to which, by agreement of the parties, it was appropriated. This rule applied where it appeared that bonds were deposited with a bank as security for loans for the individual benefit of the depositor; the agreement specifying that the bonds were deposited as collateral security for the payment of contemporaneous demand notes, "and of any and every other indebtedness or liability, due or to become due, which may exist on my [the depositor's] part to" the bank. Held, that the bonds could not be retained as security for existing or future indebtedness to the bank, of a firm of which the depositor was a member, or for payment of a note of another person, indorsed by the depositor, and discounted by the bank for his benefit.

(Syllabus by the Court.)

Action by William Fullerton against the Chatham National Bank. Judgment for plaintiff.

Stephen C. Baldwin, for plaintiff.
Daniel P. Hays, for defendant.

PRYOR, J.     In August, 1879, on obtaining a loan of $2,000 for his individual benefit, the plaintiff deposited with the defendant certain bonds, his own property, and with them delivered the following paper:

"New York, Aug. 14th, 1879.

"On demand, after date, I promise to pay to my order two thousand dollars, for value received, at the Chatham National Bank.

"Due with int.                                William Fullerton.

"As collateral security for the payment of the above note, and of any and every other indebtedness or liability, due or to become due, which may exist on my part to the Chatham National Bank, I have deposited with the said bank four thousand dollars, first mortgage bonds Grand Rapids & Indiana Railroad Company, and do hereby authorize the president of the said Chatham National Bank, on nonpayment of the said note at maturity, to sell said security, either at the board of brokers, at public auction, or at private sale, and without notice to me of such sale, and to apply the proceeds of such sale to the payment thereof. The said Chatham National Bank still reserving all its rights against me, as maker of said note, in case such proceeds shall not be sufficient to pay principal, interest, and charges in full.

"New York, August 14th, 1879.                      William Fullerton."

In September of the same year, plaintiff procured another loan, of $1,200, from the defendant, on depositing other bonds and executing an identical paper. In February, 1890, plaintiff, upon indorsing the note of Hopper S. Mott for $2,000, obtained its discount by the defendant, and deposited the proceeds to his personal account.

It is indisputable law that a security may be retained only for the debt or duty to which, by agreement of the parties, it was appropriated. Duncan v. Brennan, 83 N. Y. 487; Talmage v. Bank, 91 N. Y. 531. And the question for determination is whether the bonds above mentioned may be held for the firm indebtedness, and for payment of the Mott note. In Bank v. Tarbox, 38 Hun, 57, upon foreclosure of a mortgage executed "as security for the payment of any and all indebtedness which the said James H. Jones now owes, or may hereafter owe, at the First National Bank of Batavia, and as a continual security therefor to the amount of seven thousand five hundred dollars," the question was whether the mortgage could be enforced as a security for the payment of a debt owing by the firm of Jones & House to the bank. The court ruled against the proposition, on the ground that by the terms of the mortgage it was security only for the individual indebtedness of Jones, and that his liability for the firm obligations was not such an indebtedness. In Bank v. Thompson, 121 N. Y. 280, 24 N. E. 474, the mortgage was conditioned "for the payment of all notes, checks, or bills of exchange thereafter made, drawn, indorsed, or accepted by Thompson, and discounted by the plaintiff for his benefit, and also for the payment of all sums of money   *   *   *   which shall at any time be due or owing by him to said bank upon any account whatever." Here, too, the court held that the mortgage was not a security to

the bank upon its discount of notes made and indorsed by Thompson in the name of a firm of which he was a member, for the reason that, in the commercial sense, the obligation of a firm is not the obligation of a member, and that the language of the mortgage "would not be understood as broad enough to cover the indebtedness of a firm of which Thompson was a member, and for whose debts, jointly with the other members of the firm, he could be made responsible." It is entirely clear, then, that unless in the terms of his agreement, or the "attending circumstances" of the transaction, there be some indication of an intention on the part of the plaintiff to pledge the securities for the firm indebtedness, they can be retained only for his individual obligations. At the time of the loan by the defendant to the plaintiff, and the deposit of the securities, he was under no liability to the bank, but his firm was, both for debts already due and to become due; and the argument is that, if the securities be not applicable to the firm obligations, then the clause of the agreement, "any and every other indebtedness or liability due or to become due," is without meaning or effect. In the Tarbox Case the security was expressly for "any and all indebtedness which said James H. Jones now owes"; but though the phrase was inappropriate and pointless, because Jones was not then indebted, the security was still construed as applicable to his individual liabilities. In the present case there was a firm indebtedness to which the plaintiff might have appropriated the securities, but the question is, did he so appropriate them? The language of his agreement is not broader than the condition of the mortgages in the Tarbox and Thompson Cases; nay, not so broad, because restricted to any indebtedness or liability "on my part,"—words selected with technical accuracy to exclude the joint obligation of the firm. In ascertaining the scope and operation of the clause in the agreement relied upon as indicating a purpose to pledge the securities for the firm liabilities, we are to consider the specific transaction between plaintiff and the bank. He was negotiating a loan to himself, not to his firm, and to secure that loan he hypothecated his individual property. Any general term in the agreement of pledge, therefore, will be confined to the matter in hand, and not extended to an effect beside the purpose of the negotiation, and beyond the contemplation of the parties. "Verba generalia restringuntur ad habilitatem rei." Broom, Leg. Max. 646. "However general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears the parties proposed to contract." Gibson, C. J., in Case v. Cushman, 39 Am. Dec. 47, 49. "The matter in hand is always presumed to be in the mind and thoughts of the speaker, though his words seem to admit a larger sense, and therefore the generality of the words shall be restrained to the particular occasion." Hoffman v. Insurance Co., 32 N. Y. 405, 412. "A covenant in large and general terms may be restrained and narrowed where the intent to restrict and qualify it is apparent from other parts of the same instrument." Holmes v. Hubbard, 60 N. Y. 183, 185. Though a release be general in its terms, its operation will be limited to matters contemplated by the

parties at the time. Lyall v. Edwards, 6 Hurl. & N. 337. "The substance of the agreement is to be ascertained from the whole agreement, and not from particular words used in a single sentence." Wood v. Sheehan, 68 N. Y. 365, 368. "While effect should be given to every word of a written contract, if possible, it is sometimes necessary to reject a part as surplusage." Clarke v. Devoe, 124 N. Y. 120, 125, 26 N. E. 276. The paper in question was drawn by the defendant, and presented to the plaintiff for execution; hence the rule, "fortius contra proferentem," prevails in its construction. Hodgkins v. Insurance Co., 34 Barb. 213, 216.

But the decisive consideration in restricting the securities to the individual obligation of Judge Fullerton is the silence of the agreement as to the firm indebtedness. Had the intention been to cover that indebtedness, we may be sure it would not have been allowed to lurk in equivocal phraseology, but would have been declared in the explicit terms exacted by ordinary prudence, and habitual with bank officers. Bank officers are not wont to advance money upon an ambiguity. Indeed, upon the entire agreement, it is apparent, not only that the deposit of bonds was as security for plaintiff's individual indebtedness exclusively, but for that indebtedness as evidenced by the two demand notes to which the agreement was attached; for it was only upon default in payment of these notes that the bank was authorized to utilize the securities, and it was to payment of these notes only that the proceeds of the sale of the bonds were to be applied. It is inconceivable that, if the bonds were to be held as collateral for the firm indebtedness, provision would not have been made for the application of the bonds to the extinguishment of that indebtedness. That the bonds were pledged as security only for plaintiff's notes is an inference from other circumstances of the transaction. The transaction was a single loan, not the creation of a line of credit for future use. The notes and the collateral agreement were one and inseparable instruments, whereas upon the discount of the Mott note no reference whatever was made to the bonds as security. Indeed, the indorsement of that note by Judge Fullerton did not constitute an indebtedness "on my part," nor a "liability," except as contingent on due notice of the maker's default, of which the case exhibits no evidence. Then, too, we are to consider the language of the agreement, which is that the bonds are security for obligations "to become due," ("debitum in praesenti solvendum in futuro,") while the Mott note was not made and discounted until 10 years afterwards, a debt, if any, not foreseen at the time of the pledge, and emerging long after the deposit of the bonds. Had the security been intended for future indebtedness, the defendant, in drawing the agreement, would have explicitly so provided. "If the purpose of giving the security does not clearly appear, but there is no doubt that but one indebtedness existed against the pledgor, and in favor of the pledgee, at the time the security was given, it will be presumed to have been made for the purpose of securing that indebtedness only; and its application to subsequently accruing indebtedness will not be permitted, without the assent of the pledgor." Griggs v. Day (N. Y. App.) 32 Am. St.

Rep. 717, note, 32 N. E. 612; Buckley v. Garrett, 60 Pa. St. 333; Mc-Cluskey v. Cromwell, 11 N. Y. 593, 601, 602. No words of futurity are contained in the agreement of pledge,—"may exist" being strictly applicable to the present,—and I cannot conclude that the security is continuing, within the principle of Bank v. Hall, 83 N. Y. 338. Upon construction of the agreement in question, its effect is open to opposite inferences; but the preponderance of probabilities appears in favor of the interpretation which limits the security to the individual indebtedness of the plaintiff, and to that indebtedness as contracted upon the specific pledge of the bonds. Plaintiff asks judgment for the value of the bonds, but of that value, and of the demand necessary as proof of conversion, I see no sufficient evidence. Bryan v. Baldwin, 52 N. Y. 232, 236. Neither can he recover interest on the money due him, except, from the commencement of the action. Ledyard v. Bull, 119 N. Y. 62, 74, 23 N. E. 444.

Upon the evidence, the only relief open to plaintiff is that which he demands in the complaint. Judgment accordingly, with costs.