## TORRANCE et al. v. THIRD NAT. BANK OF PITTSBURGH.

(Circuit Court of Appeals, Third Circuit. January 23, 1914.)

### No. 1797.

PLEDGES (§ 19*)—CONTRACT—CONSTRUCTION.

Certain parties afterwards bankrupts, having executed a joint note, executed a contract pledging certain corporate stock which they owned jointly as collateral security for the payment of the note, "or any other liabilities of the undersigned to the holder now due or to become due, or that might thereafter be contracted," etc. Held that, since the note created a joint liability, the other liabilities for which the collateral was pledged should be construed also to be those incurred by the holders jointly, and hence the collateral was not available in settlement of the several obligations of the bankrupts, assumed by them as indorsers of the notes of other corporations.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig. § 19.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Francis J. Torrance, trustee of the estate of William H. Graham, bankrupt, and Justus Mulert, trustee of the estate of M. K. Salsbury, bankrupt, against the Third National Bank of Pittsburgh. Judgment for defendant, and plaintiffs bring error. Reversed, with directions.

Wm. E. Schoyer, Morris, Walker & Allen, and Lyon & Hunter, all of Pittsburgh, Pa., for plaintiffs in error.

C. F. C. Arensberg and Patterson, Crawford, Miller & Arensberg, all of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. On May 1, 1908, William H. Graham and M. K. Salsbury, bankrupts above named, executed their joint and several note to their own order, in the sum of $43,000.00, and delivered the same, indorsed in blank by them, to the Bank of Pittsburgh, N. A., payable at said bank in consideration of a loan made to them at that time. The following is a copy of said note:

"$43,000.	Pittsburgh, Pa., May 1, 1908.

"On demand, after date, for value received we jointly and severally promise to pay to the order of ourselves with interest, $43,000 having deposited herewith as collateral security for payment of this or any other liabilities of the undersigned, to the holder hereof now due or to become due or that may hereafter be contracted, the following property, viz.:

"700 shares West Penn Rys. Pfd. Stock, 300 shares Lustre Mining & Smelting Co. Stock, sold Sept. 15, 1909, with the further right to call for additional se-

curity, and on the failure to respond, this obligation shall be deemed to be due and payable without demand or notice, with full power and authority to the holder hereof to sell and assign and deliver the whole of the above mentioned securities, or any part thereof, or any substitute therefor or any additions thereto, or any other property at any time given unto or left in possession of the holder hereof, at any broker's board or at public or private sale, at the option of the holder hereof, on the non-performance of this promise, or the non-payment of any of the liabilities above mentioned at any of the times or time mentioned hereafter, without demand, advertisement or notice, and with the right to purchase as any other bidder at any public sale thereof held by virtue hereof. And after deducting all legal or other costs or expense for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made to pay any, either, or all of above mentioned said liabilities as the holder hereof shall deem proper, returning the overplus to the undersigned. [Signed] M. K. Salsbury.

"[Signed] Wm. H. Graham.

"Payable at the Bank of Pittsburgh, N. A."

At the same time, the makers deposited with the bank certain securities recited in the note. The note was made on a printed form prepared by the Bank of Pittsburgh. The securities so deposited were jointly owned by the makers.

On June 1, 1909, the Lustre Mining & Smelting Company made its note for $6,950 to the order of John H. Mueller. This note was indorsed by Mueller and by Salsbury and by Graham, individually and successively, and discounted by the Bank of Pittsburgh, N. A.

On July 19, 1909, the Lustre Mining & Smelting Company made its note for $8,100 to the order of H. D. Gamble. This note was indorsed by Gamble and afterwards by Graham and Salsbury, individually and successively, and was discounted by the Third National Bank, defendant in error, and thereafter held by it.

On August 6, 1909, the said Bank of Pittsburgh, N. A., sold and delivered the note for $43,000, dated May 1, 1908, with the securities recited therein, to the Third National Bank of Pittsburgh, the defendant in error, and also the note discounted on June 1, 1909, by the Bank of Pittsburgh, N. A., for the sum of $6,950.

On December 20, 1909, the defendant in error sold said collateral jointly owned by Graham and Salsbury, for the sum of $56,000, which was applied to the payment in full of their joint note for $43,000, of which it was the holder, leaving a surplus of $14,098.79. This surplus was applied to the individual liability of Graham and Salsbury, respectively, on the notes of June 1, 1909, and July 19, 1909.

Petitions in bankruptcy were filed against the said Salsbury and Graham on the 24th day of December, 1909, and they were both duly adjudicated bankrupts on the 13th day of January, 1910, Francis J. Torrance being appointed trustee of the estate of William H. Graham, and Justus Mulert trustee of the estate of M. K. Salsbury.

Thereafter, the plaintiffs in error, as trustees in bankruptcy of Graham and Salsbury, brought suit in the court below against the defendant in error, claiming the said sum of $14,098.79, being the surplus of the proceeds of the jointly owned securities deposited by Salsbury and Graham with the Bank of Pittsburgh at the time of its discount of their joint note for $43,000.

The case having been put at issue, a stipulation was entered into between the parties for trial before the judge without a jury, and the matter so came on for hearing, and subsequently thereto the court filed its opinion, setting forth its findings of fact and conclusions of law and ordering judgment to be entered for the defendant. Judgment was accordingly entered on the 28th day of July, 1913, against the plaintiff and for the defendants, and from this judgment plaintiffs have sued out and are now prosecuting this writ of error.

There are no disputed facts in the case, and the findings thereof by the court are substantially as above recited.

The single question presented is as to the proper interpretation of the collateral pledge of securities jointly owned by the makers of the note. We quote again the language of this pledge:

"Having deposited herewith as collateral security for the payment of this or any other liability, or liabilities, of the undersigned to the holder hereof, now due or to become due, or that may be hereafter contracted."

We observe, first, that the note created a *joint* liability. The fact that the liability was also stated to be several as well as joint, bears only upon the rights and remedies of the payee or holder, who may pursue the makers jointly or separately. The liability, however, of the makers inter sese is joint, and if the payee or holder receives or recovers from one of the makers the whole sum due upon the note, the one from whom it is thus received or recovered may, in turn, recover from the other joint maker his proportionate share of the indebtedness. It is well to keep in view this familiar legal status of the parties to the obligation created by the note, because of the insistence by defendant in error that the joint and several obligation of the note serves to extend the scope of the pledge of the jointly owned securities as collateral to the individual liabilities of the makers, as indorsers of the notes referred to. It seems to us that the words, "of this or any other liabilities of the undersigned," clearly indicate that the other liabilities referred to are of the same character as the joint liability in the $43,000 note. Moreover, the natural inference, from the words "liabilities of the undersigned," would be that the jointly owned securities were pledged only for the joint liability of the two makers. So that the clause is as if written, "any other liability or liabilities of Graham and Salsbury." Any other meaning than this is a strained, secondary, or argumentative meaning. Such a meaning cannot be imposed upon the terms of a pledge, which must be construed with a certain measure of strictness. It was for the bank that framed this pledge of jointly owned collateral, to have made the meaning now insisted upon by it clear, by inserting the words "or either of them" after the words "the undersigned," making the clause read:

"Any other liability or liabilities of the undersigned or either of them."

If, as we have said, the words "jointly and severally" in the body of the note have relation only to the remedy of the payee or holder, and do not touch the relation of the makers inter sese, the difference between the liability thus created and the individual and several liability of successive indorsers of a promissory note must be at once apparent.

The indorser who pays the amount due on the note is not liquidating a joint liability. He may, it is true, have recourse to a prior indorser for the whole, not a proportionate, amount that he had paid and may recover on the individual contract implied in the indorsement, but the liability of each indorser, individual and several, is in its essential character very different from the liability of the makers of a joint and several note. We think, therefore, that nothing can be predicated upon the word "severally" in the body of the note, that would indicate that the individual liability of Graham and Salsbury, as indorsers of the Lustre Mining & Smelting Company notes, was covered by the jointly owned securities pledged for the protection of their joint note of $43,000.

The case of Mulert, Trustee of Salsbury, v. National Bank of Tarentum, 210 Fed. 857, 127 C. C. A. 419, recently decided by this court and referred to by the learned judge of the court below, concerned the individual note of M. K. Salsbury, to which was attached a like memorandum of securities deposited as collateral for the payment of that note or "any other liabilities of the undersigned to the *holder* hereof." The bank, to whom the note was given and by whom the loan was made, transferred it to another bank, which, as holder, applied the securities, not only to the note thus transferred, but to other liabilities of the maker of the note to the holding bank. The case turned on the meaning and scope of the word "holder," and the court held that the defendant bank came within that distinction—a very different question from the one presented by the case before us.

Defendant in error called attention to the fact that when personal notice was given to both Salsbury and Graham by the bank that it was about to sell the specific securities deposited as collateral to the $43,000 note, that Salsbury wrote in reply a letter, in which it is alleged that he conceded the right of the bank to sell the collateral pledged with the joint note of himself and Graham, and apply the proceeds to the liquidation of his (Salsbury's) individual liabilities. If this were so, it would not justify the bank in selling those jointly owned securities without the assent of both joint owners. But a reference to Salsbury's letter shows that it is by no means clear that any such authority was attempted to be given in regard to the application of the proceeds of the jointly owned securities.

The judgment below is therefore reversed, with directions to the court below to enter judgment for the plaintiff, unless cause be shown to the contrary.