In re EVANS et al.

COLUMBIA NAT. BANK v. COMMONWEALTH TRUST CO.

(Circuit Court of Appeals, Third Circuit. January 5, 1917.)

No. 2164.

1. PLEDGES ⬤⟶19—CLAIMS—SECURITY—APPLICATION.

Where two joint makers of a note pledged their individual property for the payment of the note and "all other liabilities of the undersigned" to the holder of the note, the holder cannot, after the bankruptcy of the makers, apply the security to the payment of a note jointly signed by those two makers and one other, any more than it could to one signed by one of the makers alone.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig. ⬤⟶19.]

2. PARTNERSHIP ⬤⟶217(3)—NOTE—EVIDENCE.

Evidence that the signers of a joint note, who were two of the three members of a partnership, directed the money to be placed to the credit of the partnership, does not show that the note was a partnership obligation.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 425; Dec. Dig. ⬤⟶217(3).]

3. PLEDGES ⬤⟶19—CLAIMS—SECURITY—APPLICATION.

Where a bank held two secured notes of a bankrupt partnership and an unsecured joint note of the three members, it could not apply the excess of the partnership security to the payment of the individual note.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig. ⬤⟶19.]

4. PLEDGES ⬤⟶1—CONTRACT—EVIDENCE.

A statement by two makers of a secured note, who were two of the three makers of an unsecured note, that the bank need not press them, as it had plenty of security, did not make a new contract, pledging the security for the payment of the unsecured note.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 1, 4, 5; Dec. Dig. ⬤⟶1.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

In the matter of John Kuhn Evans and others, individually and as partners, bankrupts. As against the Commonwealth Trust Company, trustee in bankruptcy, the Columbia National Bank appeals from an order of the District Court dismissing appellant's claim against the estate. Order affirmed.

For opinion below, see 235 Fed. 635.

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Gifford K. Wright and McKee, Mitchell & Alter, all of Pittsburgh, Pa., for appellant.

Charles Alvin Jones and Sterrett & Acheson, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The opinion accompanying the order from which this appeal was taken ([D. C.] 235 Fed. 635) so correctly states the law that nothing more than an affirmance by this court would be necessary, were it not that the authority upon which the decision was made, being a case decided by this court, is on appeal attacked or distinguished. The facts are fully stated and the law thoroughly considered in the opinion. We will therefore repeat only what is necessary to a consideration of the phase of the question raised on appeal.

John K. Evans, James Evans and Alan S. Evans, individually and as partners, were adjudged bankrupts. The appellant bank held four of their notes given in different capacities. Two were admittedly partnership notes, being signed by the firm name of Evans Bros. These were paid by the proceeds of the sale of a portion of their accompanying collateral, leaving as an excess certain securities and funds now claimed by the appellant and held by the trustee awaiting this decision. The third note was for $15,000. It was the joint note (not the joint and several note) of James Evans and Alan S. Evans, made, so far as shown upon its face, in their individual and not in their partnership capacity, with accompanying collateral separately owned but jointly pledged "for the payment of this and *all other liabilities of the undersigned* to the holder hereof, now or hereafter due." The fourth note was a joint unsecured note for $4,500 made by James Evans, Alan S. Evans, and John K. Evans. Upon default in payment of the $15,000 note, the appellant bank realized upon its collateral approximately $17,000, applied the proceeds first to the full payment of the $4,500 note and the balance in part payment of the $15,000 note, proved a claim against the bankrupts' estate for the residue, and made a claim for the excess remaining from the sale of the collateral of the two Evans Bros. notes. The referee dismissed the appellant's claim to this excess, and entered an order disallowing its claim for the alleged unpaid residue on the $15,000 note and directed it to pay the trustee of James Evans and Alan S. Evans, individually, a sum approximating $3,000, which would have been the balance if nothing had been paid upon the three-party $4,500 note and if the proceeds had been applied in full to the two-party $15,000 note.

[1] The order was affirmed on authority of Torrance v. Third National Bank of Pittsburgh, 210 Fed. 806, 127 C. C. A. 356. In that case this court held, with respect to a note that was *both* joint and several, that because of the joint liability of the makers, the collateral jointly pledged for the payment of that and "other liabilities of the undersigned" was available only upon their other *joint* liabilities and

was not available in settlement of their several liabilities. Aside from the question of the individual or partnership character of these obligations, presently to be considered, the matters alleged to distinguish the Torrance Case from this case are, that in the former, the collateral which was jointly pledged was jointly owned by the makers, while in this case the collateral jointly pledged was severally owned by them, and that while in the former case the collateral so jointly pledged was held not available for their several obligations, here the collateral jointly pledged is available for another joint obligation of the same two makers, though joined with them therein is a third and new maker. We are not impressed that this difference of fact makes a difference in the law.

When the joint makers pledged their individual property for the payment of their joint obligation, the pledge became joint as between the owners and the bank, and did not affect or alter the joint character of the obligation, nor did it affect or alter the rule of the Torrance Case that the pledge was available only for other obligations of the same parties in the same joint character. In the Torrance Case the makers were Saulsbury and Graham, the words of the pledge in their note being precisely the same as those in the note of the two Evanses. The court said:

"It seems to us that the words 'of this or any other liabilities of the undersigned' clearly indicate that the other liabilities referred to are of the same character as the joint liability in the (note in suit). Moreover, the natural inference from the words 'liabilities of the undersigned' would be that the jointly owned securities were pledged only for the joint liability of the two makers. So that the clause is as if written 'any other liability or liabilities of Graham and Saulsbury.' "

As the liability of one maker, singly made, is different from the liability of two makers, jointly made, as held in the Torrance Case, so in this case, pari ratione, the liability of three joint makers is different from that of two joint makers. The liability of the two joint makers in this case is similar to that of the two joint makers in the Torrance Case, which, when similarly paraphrased, is "any other liability or liabilities of James Evans and Alan S. Evans." A liability of James Evans, Alan S. Evans, and John K. Evans is, therefore, not another liability of James Evans and Alan S. Evans in the sense of the Torrance decision. In other words, the joint obligation of three is no more the joint obligation of two than is the single obligation of one the joint obligation of two. We are therefore of opinion that the appellant bank acted upon a misconception of the law, not only in applying proceeds of the collateral of the $15,000 two-party note, first to the $4,500 three-party note, but in applying any of those proceeds to that note. We do not find the two cases distinguished by the difference in facts, and are of opinion that the principle of the Torrance Case rules this case and was properly invoked by the referee in his finding and by the District Court in its order.

The appellant bank claims the right to proceed against the partnership and appropriate the proceeds of the various collaterals upon the theory, first, that the $15,000 two-party note was in fact a partnership note, and second, that by an independent contract between

the bank and the makers of the two-party note, its collateral was pledged as security for payment of the three-party note.

[2, 3] Upon the first contention it was shown that the money obtained upon the loan was placed by the bank, upon the direction of the borrowers, to the credit of the partnership. But this is not evidence that the loan was made to the partnership. The note takes its character from the transaction between the two makers and the bank. This was a personal transaction of two persons individually, upon security of their individual property. The subsequent diversion and use of the money is not at all inconsistent with the loan being made to them personally, and the money thus borrowed being by them loaned to the partnership. Even if the $15,000 note were a partnership note, we are at a loss to see how it aids the appellant, for if a partnership note, the application to it of the proceeds of its own collateral wholly discharges it, making unnecessary a contribution from the excess collateral of other partnership notes and making impossible the application of the residue to the non-partnership $4,500 note. We are in accord with the finding of the District Court that it was not a partnership note.

[4] This brings us to the final contention, namely, that in a conversation between one or both of the makers of the two-party note and officers of the bank, the bank was told that it need not press them as it had ample security, thus making a new contract whereby the makers of the two-party note pledged the collateral of that note for the payment of the unsecured three-party note. We agree with the District Court that this vague and uncertain conversation did not raise a contract, and that in relying upon it, the bank relied upon a mistaken assumption of legal rights.

The order of the District Court is affirmed.

3. APPEAL AND ERROR ⬪⬪999(1)—REVIEW—FINDINGS OF FACT.
    Any dispute as to material changes prejudicial to the surety having been made in the principal's contract after the surety became bound is settled by the verdict on definite proper instructions.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3915, 3917–3921; Dec. Dig. ⬪⬪999(1).]

⬪⬪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes