## Heffner, Appellant, *v.* First National Bank of Huntingdon.

30

Argued January 23, 1933. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*R. W. Williamson,* with him *H. H. Waite,* for appellant.—The application which can be made of the collateral must depend upon the terms of the collateral note: Torrance v. Bank, 210 Fed. 806; Alexander v. McGinn, 3 Watts 220.

The collateral deposited by the plaintiff, was intended by the parties to the note to be security only for the note signed by the plaintiff and her husband, or any renewal thereof, and we submit that no other reasonable interpretation can be made of the note: **Evan v. Com. Trust Co.,** 238 Fed. 543.

*Chester D. Fetterhoff,* with him *John D. Dorris,* for appellee, cited: Oleon v. Rosenbloom, 247 Pa. 250; Miles v. Bank, 90 Pa. Superior Ct. 341; Richardson v. Bank, 189 Mass. 25; Kulp v. Brandt, 162 Pa. 222.

OPINION BY MR. JUSTICE KEPHART, March 20, 1933:

Margaret Heffner, appellant, and her husband, A. M. Heffner, appear as co-makers on a promissory note for $2,000, dated December 2, 1929, payable to the First National Bank of Huntingdon, appellee herein. The pertinent provisions thereof read as follows:

"$2,000          Huntingdon, Pa., December 2, 1929.

"Ninety one days after date, for Value Received, I promise to pay to the order of First National Bank, Huntingdon, Pa., Two Thousand and $0\%_{100}$ Dollars, having deposited as collateral security for payment of this or any other liability or liabilities to said holder thereof due or to become due, or that may be hereafter contracted, the following property, viz.: 67 Shs. P. R. R. Co. . . . . . ."

The note was the last of a series of several notes renewing successively, every three months, a note dated July 6, 1918. At that time 67 shares of stock of the P. R. R. owned by Mrs. Heffner, the certificate being in her name, were deposited as collateral security. In December, 1929, Heffner together with other persons borrowed several sums from appellee Bank, in each case giving their joint and several notes therefor. These notes were by Heffner and his brother, A. B. Heffner, for $465; by Heffner with E. P. Heffner and A. B. Heffner for $3,625; by Heffner with E. P. Heffner and E. W. Benson for $3,400, and the last by Heffner and his son, who were associated together in business, for $450. Appellant's husband subsequently became bankrupt.

On June 6, 1930, appellant, by letter, directed the bank to sell the stock at 75½, and apply so much of the proceeds thereof as was necessary to pay the $2,000 note and remit to her any surplus. On July 2d the bank, in

a letter to her attorney, informed her that it held unsatisfied claims, for which the railroad stock was pledged as collateral security, against A. M. Heffner, co-maker of the note for $2,000, and as a result was unable to comply with her request.

In this proceeding to compel the bank to account for the value of the stock, and to pay to her the surplus after liquidating her note for $2,000, the chancellor, after hearing, denied her request and dismissed the bill.

Appellee bank rests its claim to apply the surplus to the unsatisfied claims enumerated above against appellant's husband, on the following provision of the note: "having deposited as collateral security for the payment of this or any other liability or liabilities to said holder hereof, due or to become due, or that may be hereafter contracted, the following property, viz.: 67 Shs. of P. R. R. Co."

The controversy, therefore, narrows itself to the proper interpretation of this collateral pledge: whether under it appellee, the holder, was authorized to apply the surplus from the proceeds of the sale of appellant's stock to the satisfaction of other notes made jointly by her husband with others and payable to appellee bank.

The obligation is the joint and several note of appellant and her husband, A. M. Heffner: Negotiable Instruments Act of May 16, 1901, P. L. 194, section 17, paragraph 7; Walker v. Bank of Montgomery Co., 12 S. & R. 382; Delaware Co. Trust, etc., Co. v. Haser, 199 Pa. 17.

Under it *joint* liability is created. The liability is, in the alternative; several has to do only with the remedies of the holder, conferring upon holder the remedy of pursuing the co-makers separately and recovering the whole amount due on the note from either, but it does not add to the substantive right involved, i. e., the payment of the note by the makers. The obligation of the makers, as between themselves, is joint. If the holder recover from one the full sum due on the note, that one may compel the other to reimburse him the proportionate share for

which he is responsible. The rule of substantive law, as distinguished from the procedural, is that co-makers are *jointly* responsible for the satisfaction of the obligation; the substantive right in the holder is to have payment of the note by the makers. It is well to keep in view this familiar legal status of the parties because of the insistence by appellee that the joint and several obligation of the note serves to extend the scope of the severally owned securities of one maker pledged as collateral, to the joint liabilities of the other maker with third parties. See Torrance v. Third Nat. Bank, 210 Fed. 806, 808.

The clause under consideration lacks a complete expression of the intention of the parties. It speaks of "any other liability or liabilities," but fails to indicate whose liability or liabilities. Certainly, the parties thereto contemplated the inclusion of the idea (if the clause is to have any meaning) "any other liability or liabilities *of the undersigned,*" or, "any other liability or liabilities *of Margaret and A. M. Heffner.*" To omit this implication from the provision leaves it meaningless, since the parties assuredly did not refer to any liabilities in general.

The natural inference from the clause as we have thus completed it is that the securities were pledged for liabilities similar to those incurred on the note-joint liabilities, the joint liabilities of the undersigned, of Margaret and A. M. Heffner. To conclude otherwise would require a forced, unusual and argumentative meaning to be placed on the agreement. The joint liability of appellant and her husband is very different from the joint liability: [1] of her husband and his brother, [2] of her husband, his son and his brother, [3] of her husband and his son and a third party.

A pledge, like any other contract, where there is any doubt as to its meaning, must be construed with some degree of strictness against the party preparing it: Kelter, Tr., v. American Bankers Finance Co., 306 Pa.

483; St. Lucie Co. Bank & Trust Co. v. Aylin, 114 So. 438; Nat. Bank of Kentucky v. Gallagher, 49 S. W. [2d] 1006; Gillet v. Bank of America, 160 N. Y. 549; Holston Nat. Bank v. Wood, 125 Tenn. 6. The form signed by appellant and her husband was the usual printed form note of appellee, and it was for the bank that prepared it to word it clearly in accordance with the meaning it now insists upon, by inserting words which adequately conveyed that meaning.

The fact the note is a renewal note does not affect its relation to the collateral involved. When parties give their note, secured by collateral deposited at the time the loan is made, and thereafter the loan is renewed by renewal notes similar to the original, the pledge of the collateral is not thereby affected, but continues as security therefor as originally contracted, in the absence of any expressions of a contrary intent: Church v. Swetland, 243 Fed. 289, appeal dismissed, 249 U. S. 579.

While we have no cases decided by appellate courts directly ruling the question, the authorities of other jurisdictions support the conclusion here reached. In fact our independent research discloses no case reaching a result inconsistent with our position and none has been pointed to by counsel.

The case bearing most directly on the question is In re Haynsworth, 34 Fed. [2d] 334. Therein a partnership note was executed by the firm of Haynsworth & Stuckey. Stock was deposited as security therefor and for the payment of "all other demands, present or future of the undersigned to the payee." Haynsworth was a co-maker on other notes with third parties. It was held that the collateral could not be subjected to payment of other joint liabilities of the makers of the note and other parties who were not makers of the original collateral note.

Another case having a pledge of similar import with stock jointly owned as collateral is Torrance v. Third Nat. Bank, supra. In it two individuals, Graham and Salsbury, executed their joint and several note to a bank

for $43,000. Graham and Salsbury became indorsers individually on notes of other makers. These were discounted by the bank. Subsequently the bank sold the collateral securing the note of Graham and Salsbury for $56,000, and after satisfying that note for $43,000, applied the surplus to the individual liability of Graham and Salsbury on their indorsements. The trustees in bankruptcy of Graham and Salsbury, individually, sought to recover the surplus from the bank and it was held they were entitled to it. The case holds that if property, even when jointly owned by the pledgors (in the instant case the property was owned individually by appellant), is pledged for their *joint* liability, the surplus of the proceeds thereof, after satisfaction of the note, may not be applied to the several liability of the makers as indorsers on the notes of others. If the distinction is pressed that this several liability as indorser is very different from the liability of A. M. Heffner on his joint and several notes made directly to appellee, it is answered by indicating that the property pledged in the instant case was the individual property of appellant and it would be manifestly inequitable to subject it to the payment of joint liabilities of her co-maker and others. If property jointly owned is not subject to the several liabilities of the owners, for a stronger reason, property individually owned by one of them should not be subject to the joint liability of the other and a third person. Other cases sustain this conclusion. See In Re Evans et al., 238 Fed. 543, wherein the court stated that the liability of three joint makers is different from the liability of two joint makers. Collateral pledged to secure the joint liability of James and Alan was not to be subjected to payment of the joint obligation of James, Alan and John. Such a result strengthens our conclusion, for Mrs. Heffner was owner of the stock pledged for the joint liability of herself and A. M. Heffner, and was not even a party to the joint liability on the notes of A. M. Heffner with other persons.

The Court of Appeals of Kentucky recently considered the same question in National Bank of Kentucky v. Gallagher, 49 S. W. [2d] 1006. The court says that col-lateral cannot "be appropriated to a different debt or class of debts." See also First Nat. Bank v. Scott, 123 N. C. 538.

Appellee relies on Oleon v. Rosenbloom & Co., 247 Pa. 250, and Miles v. Centennial Nat. Bank, 90 Pa. Superior Ct. 341; but an examination of these cases fails to sus-tain it. Oleon v. Rosenbloom & Co., supra, does not con-sider the problem of the case before us except to recog-nize that an individual may contract that collateral presently deposited for a loan may be subjected to the payment of prior or subsequent loans. It holds that the security of the pledge, for all of such liabilities, follows the note, upon indorsement by the payee, into the hands of the indorsee so that, if the indorsee holds other claims against the maker, the collateral may be subject to their payment. Mulert v. Nat. Bank of Tarentum, 210 Fed. 857, is identical, and the court expressly limits its deci-sion to that point by saying at page 859: "This ques-tion, be it observed, is the only one here involved and decided." We may point out, however, that in both Oleon v. Rosenbloom & Co., supra, and the Mulert Case, the other liabilities of the maker which the holder planned to satisfy were several liabilities—liabilities of the same class as the liability of the individual note for which the collateral was primarily pledged as security.

The lower court based its decision on the other case relied on by appellee: Miles v. Centennial Nat. Bank, supra. Therein, a brokerage firm wrongfully pledged negotiable bonds belonging to the plaintiff, as security for loans to itself. The loans were made upon the under-standing that the collateral should be held as security not only for those loans presently contracted, but for prior and subsequent loans. The plaintiff maintained that the bank was not a holder for value except as to the presently made loans, but the court held that there was

present value and that the bank had given value even as to the antecedent indebtedness; thus following a well recognized principle. See King v. Mellon Nat. Bank, 227 Pa. 22.

Some mention was made at the argument of another provision in the note reading as follows: "......after deducting......expenses for collection......to apply the residue of the proceeds of such sale......to pay any, either or all of said liabilities......" This provision refers to "said liabilities," patently indicating those defined in the first sentence of the note and is subject to the discussion concerning them. The other provision stressed by appellee is: "as security......for any and all liability or liabilities, matured or unmatured, of such maker, indorser or indorsers, guarantor or guarantors to said Bank, which liens shall be enforceable in like manner and shall be subject to all provisions herein above and before mentioned and set out." This does not enlarge the classification of liability secured, but merely strengthens the security for such liability by granting to the Bank a "like lien upon any and all funds, stocks, bonds, notes, and other property at any time in the hands of the Bank......" But were this sentence open to other interpretation as to the extent of the liabilities to which it has reference, it would still be subject to the fatal objection that it is dealing with property other than that specifically deposited as collateral for this note, i. e., property which may be "at any time in the hands of the Bank."

The foregoing discussion disposes of all the points involved. It is admitted that the sum for distribution is $5,058.50, and after deducting the amount due from appellant on the note, the balance is $3,058.50.

The decree of the court below is reversed and the case remanded with directions to enter a decree for appellant in the sum of $3,058.50, costs to be paid by appellee.