PERRON v. FIRST NATIONAL BANK.

1. PLEDGES—INTENT.
   The determination of the legal effect of a pledge is controlled by the intention of the parties.

2. SAME—CONSTRUCTION OF CONTRACT PREPARED BY PLEDGEE—INTENT—PARTICULAR AND GENERAL INDEBTEDNESS.
   A contract of pledge, prepared by the pledgee, which is not clear as to whether the collateral shall secure a particular indebtedness, must be construed in favor of the pledgor and when there is a provision in a pledge as to general indebtedness, the intention of the parties, especially the pledgor, is the controlling element.

3. SAME—CONSTRUCTION OF PROVISION AS TO GENERAL INDEBTEDNESS—INTENT.
   A pledge containing a provision as to general indebtedness will secure only such other debts or liabilities of the pledgor as the terms of the pledge show it was the intention of the parties

it should secure and will not be extended to a debt or obligation other than that intended by the pledgor.

4. Same—Doubtful Meaning of Contract.

If the meaning of the contract or pledge is doubtful, its provisions will be limited to a restricted class of obligations presumed to have been in contemplation of the parties when the contract was made.

5. Same—Liability as Individual and Indorser—Sale of Collateral.

Under contract of pledge whereby maker of note to bank authorized sale of the collateral on the maturity of the note or at other times in event the security depreciated in value, it cannot be said parties intended sale of collateral was dependent upon payment of a corporation's notes which the maker had previously indorsed where contract of pledge made no specific provision therefor since his liability on corporation's notes, though perhaps a primary one because he had waived notice, was a joint liability.

6. Same—Construction.

Contracts of pledge must be construed with a certain measure of strictness.

7. Bills and Notes—Indorsement Before Delivery.

One who indorses a note before delivery is held in effect to be a maker jointly with the drawer of the note, where he waived presentment for payment, demand, protest, and notice of protest for nonpayment.

8. Same—Indorsement—Individual Liability—Sale of Collateral.

President of corporation who indorsed its note individually before delivery to payee in effect became a joint maker of the company notes but such liability was in an entirely different capacity than his liability upon his individual notes to same payee and did not authorize sale of collateral pledged with individual notes and application of proceeds in satisfaction of the company's notes.

9. Pledges—Use of Collateral as Security for Debt of Another Person or Same Person in Different Capacity.

Where the property is pledged as security for the debt of a particular debtor, unless the pledgor consents thereto, it cannot be held as security for the debt of another person, or for a debt of the original debtor in a different capacity.

10. SAME—INDIVIDUAL LIABILITY OF PLEDGOR—JOINT AND CONTINGENT
    LIABILITY.

   Collateral pledged by maker of notes to bank for payment of
      his individual notes and for "any other liabilities of the under-
      signed to said payee or assigns, due, or to become due, or that
      may hereafter be contracted" may not be applied to maker's
      joint and contingent liability as indorser of a corporation's
      note.

Appeal from Delta; Bell (Frank A.), J.   Sub-
mitted April 18, 1939.   (Docket No. 35, Calendar
No. 40,401.)   Decided July 6, 1939.

Case by William J. Perron, administrator *de bonis
non* with will annexed of the estate of Menezippe
Perron, deceased, against First National Bank of
Escanaba, Michigan, for damages for the conver-
sion of stock.   Directed verdict and judgment for
defendant.   Plaintiff appeals.   Reversed and new
trial granted.

*Yelland & Yelland,* for plaintiff.

*Frost & Deo,* for defendant.

McALLISTER, J.   Menezippe Perron, now deceased,
was president of the Wolverine Delta Motor Com-
pany prior to 1922.   On October 31st of that year,
he became indorser with other parties on a note
drawn by Marcel LaFleur, for the benefit of the
company, in the amount of $15,000, payable to de-
fendant bank.   On December 31, 1925, the motor
company, through its officers, executed a promis-
sory note to the same bank for a like amount, upon
which Perron was likewise one of the indorsers.
Both notes were given for company obligations, the
indorsers waiving presentment for payment, de-
mand, protest, and notice of protest for nonpayment.

On March 22, 1927, Perron executed a note, payable on demand, to the bank in the amount of $2,500, and on February 5, 1929, he executed a further demand note to the same bank in the amount of $1,000. For payment of the note of $2,500, Perron pledged and assigned two life insurance policies, and for the $1,000 note he pledged 240 shares of stock in the Boston Store Company. These notes drawn by Perron in his individual capacity included an agreement of pledge signed by Perron stating that he had "transferred and delivered to the legal holders hereof as collateral security, for the payment of this and of any other liabilities of the undersigned to said payee or assigns, due, or to become due, or that may hereafter be contracted, the following property," thereafter setting forth the security, and that "the undersigned hereby gives the said payee and assigns authority to sell the said property, or any part thereof, or any substitutes therefor, and all additions thereto, on the maturity of the above note, or any time thereafter, or before, in the event of said security depreciating in value, at any public or private sale, without advertising the same, or demanding payment or giving notice, with the right to said payee and assigns themselves to be the purchasers, when the sale is made at any brokers' board or public sale. And after deducting all costs and expenses, to apply the residue to the payment of any, either or all liabilities as aforesaid, as said payee or assigns shall elect, returning the overplus to the undersigned; and in case the proceeds of the sale of said property shall not cover the principal, interest and expenses, the undersigned engages to pay the deficiency forthwith after such sale, with legal interest."

The notes were not paid, and at the time of the death of Perron in 1932, the bank, after applying the proceeds of the life insurance policies on Per-

ron's individual note of $2,500, applied the balance of the proceeds on the firm obligations represented by the notes on which Perron was indorser, and filed a claim for the balance due on such notes against Perron's estate. This claim was disallowed by the probate court because of the statute of limitations, and on appeal, such determination was affirmed by the circuit court.

During this time, the bank was holding the collateral security, consisting of the Boston Store Company stock which Perron had pledged at the time he executed one of his personal notes. In February, 1938, the bank advertised this stock for sale at public auction and after notifying the executrix of Perron's estate of the time and place of sale, sold the stock to the highest bidder for the sum of $10,300, which was $61 more than the balance due with expenses on the two notes on which Perron was indorser. The bank tendered such excess to the executrix of Perron's estate, together with a statement of the indebtedness and the application of the proceeds of sale. This tender was refused, and thereafter plaintiff herein as administrator *de bonis non* of the estate of Menezippe Perron brought an action at law in trespass on the case against the bank, claiming damages for wrongful conversion of the Boston Store Company stock. On the trial the court directed a verdict of not guilty, and plaintiff appeals from the judgment entered thereon.

Plaintiff contends that Perron was only secondarily liable on the two notes totaling $30,000 on which he was indorser and, because of the lapse of the period provided in the statute of limitations, no liability can be asserted against the Perron estate. It is further asserted that, under the contract of pledge, the collateral secured only Perron's individual notes and did not extend to the contingent liabil-

ity of Perron in the capacity of an indorser on the notes representing firm obligations. It is also claimed that the determination of the probate and circuit courts, denying the claim of the bank against the Perron estate because of the statute of limitations, is *res judicata* of the rights of the bank in the instant case. Plaintiff's chief contention, on which he bases a right of reversal of the judgment, is that when collateral is pledged for payment of an obligation of a debtor in one capacity, it cannot be held as security for payment of an obligation of such debtor in another capacity.

The determination of the legal effect of the pledge is controlled by the intention of the parties. If the contract of pledge prepared by the pledgee is not clear as to whether the collateral shall secure a particular indebtedness, it must be construed in favor of the pledgor; and when there is a provision in a pledge as to general indebtedness, the intention of the parties, especially the pledgor, is the controlling element. Such a pledge will secure only such other debts or liabilities of the pledgor as the terms of the pledge show it was the intention of the parties it should secure. It will not be extended to a debt or obligation other than that intended by the pledgor. 49 C. J. p. 938. If the meaning of the contract or pledge is doubtful, its provisions will be limited to a restricted class of obligations presumed to have been in contemplation of the parties when the contract was made.

"An agreement for a continuing security in a note by a customer to his bank prepared by the bank is to be liberally construed in favor of the customer. Thus, where an agreement, in a printed form of note furnished by the bank and signed by the customer on obtaining a loan for the amount of the note, by which the customer pledged certain property as

collateral security for the payment of the note 'or any other liability or liabilities of the undersigned to the said bank, due or to become due, or which may hereafter be contracted or existing,' is properly construed, in accordance with the reasonable intention of the parties, as referring only to liabilities of the customer to the bank in the ordinary course of its banking business, the bank is not entitled to retain the pledged property for the purpose of applying it upon a note of the customer to a third party, which, although drawn payable at the customer's bank, was not paid by it or charged to the customer's account, but was dishonored, and then purchased, by the bank." Jones on Collateral Security (3d Ed.), § 361-b, p. 445.

In *Fullerton* v. *Chatham National Bank,* 17 Misc. 529 (40 N. Y. Supp. 874), collateral had been pledged for two individual notes of plaintiff, "and of any and every other indebtedness or liability, due or to become due, which may exist on my part to the Chatham National Bank." Subsequently, plaintiff indorsed a note for partnership indebtedness, and the collateral was thereafter sold and applied on such note. On suit being brought by plaintiff to recover such security, defendant contended that if the collateral was not applicable to the firm obligations indorsed by plaintiff, that the agreement of pledge setting forth that it was for the payment "of any and every other indebtedness or liability due or to become due," would be without meaning and of no effect. The court held that unless there was, in the terms of the agreement or attendant circumstances of the transaction, some indication of the intention on the part of plaintiff to pledge the collateral for the firm indebtedness, it could be applied only to the individual obligations of plaintiff; and in its opinion, finding against the defendant, the court said:

"In ascertaining the scope and operation of the clause in the agreement relied upon as indicating a purpose to pledge the securities for the firm liabilities, we are to consider the specific transaction between plaintiff and the bank. He was negotiating a loan to himself, not to his firm, and to secure that loan he hypothecated his individual property. Any general term in the agreement of pledge, therefore, will be confined to the matter in hand, and not extended to an effect beside the purpose of the negotiation, and beyond the contemplation of the parties. '*Verba generalia restringuntur ad habilitatem rei vel personam.*' Broom, Legal Maxims (7th Ed.), p. 646. 'However general the terms may be in which .an agreement is conceived, it only comprehends those things in respect to which it appears the parties proposed to contract.' Gibson, C. J., in *Case* v. *Cushman,* 3 Watts & Serg. (Pa.) 544 (39 Am. Dec. 47, 49). 'The matter in hand is always presumed to be in the mind and thoughts of the speaker, though his words seem to admit a larger sense, and therefore the generality of the words shall be restrained to the particular occasion.' *Hoffman* v. *Ætna Fire Ins. Co.,* 32 N. Y. 405, 412 (88 Am. Dec. 337). 'A covenant in large and general terms may be restrained and narrowed where the intent to restrict and qualify it is apparent from other parts of the same instrument.' *Holmes* v. *Hubbard,* 60 N. Y. 183, 185. Though a release be general in its terms, its operation will be limited to matters contemplated by the parties at the time. *Lyall* v. *Edwards,* 6 Hurl. & Nor. 337 (158 Eng. Rep. 139). 'The substance of the agreement is to be ascertained from the whole agreement, and not from particular words used in a single sentence.' *Wood* v. *Sheehan,* 68 N. Y. 365, 368. 'While effect should be given to every word of a written contract, if possible, it is sometimes necessary to reject a part as surplusage.' *Clarke* v. *Devoe,* 124 N. Y. 120, 125 (26 N. E. 275, 21 Am. St. Rep. 652). The paper in question was drawn by the

defendant, and presented to the plaintiff for execution; hence the rule, '*fortius contra proferentem,*' prevails in its construction. *Hodgkins* v. *Montgomery County Mutual Ins. Co.*, 34 Barb. (N. Y.) 213, 216.

"But the decisive consideration in restricting the securities to the individual obligation of Judge Fullerton is the silence of the agreement as to the firm indebtedness. Had the intention been to cover that indebtedness, we may be sure it would not have been allowed to lurk in equivocal phraseology, but would have been declared in the explicit terms exacted by ordinary prudence, and habitual with bank officers. Bank officers are not wont to advance money upon an ambiguity. Indeed, upon the entire agreement, it is apparent, not only that the deposit of bonds was as security for plaintiff's individual indebtedness exclusively, but for that indebtedness as evidenced by the two demand notes to which the agreement was attached; for it was only upon default in payment of these notes that the bank was authorized to utilize the securities, and it was to payment of these notes only that the proceeds of the sale of the bonds were to be applied. It is inconceivable that, if the bonds were to be held as collateral for the firm indebtedness, provision would not have been made for the application of the bonds to the extinguishment of that indebtedness. * * * 'If the purpose of giving the security does not clearly appear, but there is no doubt that but one indebtedness existed against the pledgor, and in favor of the pledgee, at the time the security was given, it will be presumed to have been made for the purpose of securing that indebtedness only; and its application to subsequently accruing indebtedness will not be permitted, without the assent of the pledgor.' *Griggs* v. *Day,* 136 N. Y. 152 (32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 717, note); *Buckley* v. *Garret,* 60 Pa. 333 (100 Am. Dec. 564); *McCluskey* v. *Cromwell,* 11 N. Y. 593, 601, 602.''

In the instant case, the pledge provided that the payee had authority to sell the collateral "on the maturity of the above note, or any time thereafter, or before, in the event of said security depreciating in value." Inasmuch as the contract provided that the collateral was to be sold only on such conditions with reference to the individual notes of Perron, it could not be said that the parties intended that the sale of collateral was dependent upon payment of the notes which Perron had previously indorsed for the corporation. If the collateral had been intended to secure the corporation notes, the agreement of pledge would have provided for such sale or foreclosure by the bank in case of default thereupon. But there is no provision to this effect. The collateral was to be sold only in case of default in payment of the individual notes. As an indorser of the corporation indebtedness, Perron was liable in a different capacity from that of a maker of his individual notes. It is true that by waiver of notice on such demand notes by the corporation, he became in a sense primarily liable; but his liability was joint. Provisions of the pledge will be limited to the class of obligations that are presumed to have been in contemplation of the parties when the pledge was made. While Perron may have been primarily liable on the corporation obligations in case of suit, his liability was only contingent in nature, in case the notes were not paid by the makers; while on his personal notes his obligation was not only primary but absolute.

In *Torrance* v. *Third Nat'l Bank of Pittsburgh*, 127 C. C. A. 356 (210 Fed. 806), two parties jointly and severally executed a note for $43,000 and deposited security "for payment of this or any other liabilities of the undersigned to the holder hereof now due or to become due or that may hereafter be contracted." They later individually indorsed two

other notes, which were discounted by the defendant bank that owned the previous note. Thereafter, the bank sold the collateral pledged for the first note and after satisfying the obligation applied the surplus of the proceeds to the payment of the notes which had been indorsed individually by the parties executing the original note. The bank contended that it was entitled to apply the collateral given by the makers of the joint note to the liability of the same parties as indorsers on the other notes, on the ground that by the contract of pledge they had given the collateral for payment of their joint note, and any other liabilities of the makers due or to become due or that thereafter might be contracted.

The court held that the application of the collateral was limited to the joint note, and could not be applied on the indorsed notes, stating in the course of its opinion the rule of law applicable, as follows:

"The single question presented is as to the proper interpretation of the collateral pledge of securities jointly owned by the makers of the note. We quote again the language of this pledge:

" 'Having deposited herewith as collateral security for the payment of this or any other liability, or liabilities, of the undersigned to the holder hereof, now due or to become due, or that may be hereafter contracted.'

"We observe, first, that the note created a *joint* liability. The fact that the liability was also stated to be several as well as joint, bears only upon the rights and remedies of the payee or holder, who may pursue the makers jointly or separately. The liability, however, of the makers *inter sese* is joint, and if the payee or holder receives or recovers from one of the makers the whole sum due upon the note, the one from whom it is thus received or recovered may, in turn, recover from the other joint maker his proportionate share of the indebtedness. It is well to keep in view this familiar legal status of the parties

to the obligation created by the note, because of the insistence by defendant in error that the joint and several obligation of the note serves to extend the scope of the pledge of the jointly owned securities as collateral to the individual liabilities of the makers, as indorsers of the notes referred to. It seems to us that the words, 'of this or any other liabilities of the undersigned,' clearly indicate that the other liabilities referred to are of the same character as the joint liability in the $43,000 note. Moreover, the natural inference, from the words 'liabilities of the undersigned,' would be that the jointly owned securities were pledged only for the joint liability of the two makers. So that the clause is as if written; 'any other liability or liabilities of Graham and Salsbury.' Any other meaning than this is a strained, secondary, or argumentative meaning. Such a meaning cannot be imposed upon the terms of a pledge, which must be construed with a certain measure of strictness. It was for the bank that framed this pledge of jointly owned collateral, to have made the meaning now insisted upon by it clear, by inserting the words 'or either of them' after the words 'the undersigned,' making the clause read:

" 'Any other liability or liabilities of the undersigned or either of them.'

"If, as we have said, the words 'jointly and severally' in the body of the note have relation only to the remedy of the payee or holder, and do not touch the relation of the makers *inter sese,* the difference between the liability thus created and the individual and several liability of successive indorsers of a promissory note must be at once apparent. The indorser who pays the amount due on the note is not liquidating a joint liability. He may, it is true, have recourse to a prior indorser for the whole, not a proportionate, amount that he had paid and may recover on the individual contract implied in the indorsement, but the liability of each indorser, individual and several, is in its essential character very differ-

ent from the liability of the makers of a joint and several note. We think, therefore, that nothing can be predicated upon the word 'severally' in the body of the note, that would indicate that the individual liability of Graham and Salsbury, as indorsers of the Lustre Mining & Smelting Company notes, was covered by the jointly owned securities pledged for the protection of their joint note of $43,000.''

*In re Evans,* 151 C. C. A. 479 (238 Fed. 543), where collateral was pledged for payment of the joint note of two parties and for the payment of ''all other liabilities of the undersigned to the holder hereof, now or hereafter due,'' it was held that such collateral could not be applied upon another note which the same parties had jointly executed as makers with a third party. In its decision, the court said:

''As the liability of one maker, singly made, is different from the liability of two makers, jointly made, as held in the * *Torrance Case,* 127 C. C. A. 356 [210 Fed. 806], so in this case, *pari ratione,* the liability of three joint makers is different from that of two joint makers. The liability of the two joint makers in this case is similar to that of the two joint makers in the *Torrance Case,* which, when similarly paraphrased, is 'any other liability or liabilities of James Evans and Alan S. Evans.' A liability of James Evans, Alan S. Evans, and John K. Evans is, therefore, not another liability of James Evans and Alan S. Evans in the sense of the *Torrance* decision. In other words, the joint obligation of three is no more the joint obligation of two than is the single obligation of one the joint obligation of two. We are therefore of opinion that the appellant bank acted upon a misconception of the law, not only in applying proceeds of the collateral of the $15,000 two-party note, first to the $4,500 three-party note, but in applying any of those proceeds to that note. We do not find the two cases distinguished by the difference in facts, and

---

* Cited *ante,* 638.—Reporter.

are of opinion that the principle of the *Torrance Case* rules this case and was properly invoked by the referee in his finding and by the district court in its order.''

See, also, *In re Haynsworth,* 34 Fed. (2d) 334; *Heffner* v. *First National Bank of Huntingdon,* 311 Pa. 29 (166 Atl. 370, 87 A. L. R. 610 and note).

Perron, as indorser of the company notes, waived presentment for payment, demand, protest, and notice of protest for nonpayment. He was in effect a joint maker of the company notes. See *City National Bank* v. *Price's Estate,* 225 Mich. 200, 212. His obligation upon them was in an entirely different capacity than his liability upon his individual notes: ''Where the property is pledged as security for the debt of a particular debtor, unless the pledgor consents thereto, it cannot be held as security for the debt of another person, or for a debt of the original debtor in a different capacity.'' 49 C. J. p. 940.

*In re Dosker's Estate,* 284 Mich. 597, cited by defendant, is distinguishable from the case before us. There, the indorser was not the pledgor, nor did the maker of the notes in question execute any of them in any other capacity than as an individual maker.

In the instant case, the collateral pledged by Perron for payment of his individual notes and for ''any other liabilities of the undersigned to said payee or assigns, due, or to become due, or that may hereafter be contracted,'' may not be applied to his joint and contingent liability as indorser of the notes for the corporation's obligation. Our determination makes it unnecessary to discuss other questions set forth in the briefs.

Judgment reversed and new trial granted, with costs to plaintiff.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.