## Lestz v. Cochran et al.

*Marshall M. Cohen*, for plaintiff.
*Windolph & Mueller*, for defendants.

ATLEE, P. J., October 28, 1938.—In this bill in equity plaintiff is Joseph Lestz. Defendants are John S. Cochran and six associates, liquidating trustees of certain assets of the Lancaster Trust Company, a closed trust company. Plaintiff relates that on March 30, 1925, together

with Samuel Lestz and Jacob L. Lestz, partners, trading as Samuel Lestz Bro. & Son, he executed a mortgage with accompanying bond in the amount of $25,000 to the Lancaster Trust Company. The mortgage covered premises located at 317 and 317½ North Queen Street, Lancaster, Pa. The purchase price for the real estate mortgaged was the sum of $41,000.

On May 28, 1927, Samuel Lestz, one of the partners, died, leaving as the surviving partners Jacob L. Lestz and Joseph Lestz, plaintiff herein. On July 19, 1933, the liquidating trustees, having taken over the assets formerly held by the Lancaster Trust Company, entered judgment on the judgment bond accompanying the mortgage. This was done by virtue of a warrant of attorney to confess judgment contained in the bond. Judgment was entered for the sum of $25,000, together with interest from October 1, 1929, in the Court of Common Pleas of Lancaster County, no. 627, April term, 1933. Thereafter, defendants issued a scire facias sur mortgage on the obligation, and on March 19, 1937, a judgment was entered for want of an appearance in favor of defendants herein and inter alios against plaintiff in this bill for $37,454.17. On March 20, 1937, defendant trustees issued a levari facias execution writ. By virtue of this writ the real estate known as 317 and 317½ North Queen Street, Lancaster, Pa., formerly owned by plaintiff in this bill and his associates as partners, on April 16, 1937, was sold at sheriff's sale to defendants in this bill for the sum of $314.65: see Execution Docket of the Prothonotary's Office of Lancaster County, no. 98, April term, 1937. Then plaintiff goes on to aver that the purchase price paid for the property, namely, the sum of $314.65, was grossly disproportionate to the fair market value of the property.

Thereafter, plaintiff in this bill petitioned the Court of Common Pleas of Lancaster County to enter a deficiency judgment under the Act of July 1, 1935, P. L. 503, alleging, inter alia, that the fair market value of the real estate so sold at sheriff's sale was $35,000. This court discharged

the rule to show cause why a deficiency judgment should not be found, and entered judgment on the ground that the act of assembly referred to had been declared unconstitutional by the appellate courts of this State. So it appears that there then remained a partnership obligation due to defendants by Samuel Lestz, Jacob L. Lestz, and Joseph Lestz, partners, formerly trading as Samuel Lestz Bro. & Son, in the amount of the face value of the aforementioned judgment, plus costs, namely, $38,103, less the aforesaid purchase price of $314.65, to wit, the sum of $37,716.35.

Then plaintiff goes on to relate that prior to the date when the Secretary of Banking of this State took over the Lancaster Trust Company, plaintiff was individually indebted to the trust company in the sum of approximately $6,800, which indebtedness was secured by a personal individual collateral note of plaintiff in this bill, there being pledged as collateral certain securities described. Thereafter, plaintiff avers that on or about December 1, 1932, the Fulton National Bank of Lancaster took over certain assets of the Lancaster Trust Company and among these assets was the note above mentioned. Thereafter, plaintiff reduced the amount due on the note to the sum of $966. Subsequent to November 2, 1936, and prior to the maturity of the last renewal collateral note, the Fulton National Bank retransferred the note to defendants herein, transferring also the collateral security accompanying the note. Thereafter, 20 shares of Texas Corporation stock were sold at the request of plaintiff and from said balance there was realized an amount more than sufficient to pay in full the balance due on the collateral note. Plaintiff has demanded the return of the collateral note and the collateral pledged against it, which return defendants have refused to make. Plaintiff avers that the securities now held by defendant have substantially increased in value and are so increasing, and that thus defendants are wrongfully withholding the collateral of plaintiff, since the individual collateral note given by

plaintiff has been paid. Reciting the above facts as grounds for equitable relief, plaintiff seeks the issuance of an injunction permanently restraining defendants:

1. From selling, transferring, assigning, or in any other manner disposing of the listed securities now in their possession, registered personally in the name of Joseph Lestz, plaintiff herein, a description of which securities is more fully itemized in "Exhibit B" attached and made a part of the bill of complaint.

2. From proceeding in any manner against plaintiff personally in the collection of any partnership indebtedness until all remedies against the partnership are exhausted and all partnership assets are fully liquidated.

This court also is asked to enter a decree: (1) Commanding defendants to return to plaintiff the collateral note; (2) commanding defendants to deliver to plaintiff all remaining collateral security; (3) commanding defendants to place a fair market value on the premises sold under the mortgage foreclosure proceeding and to apply said valuation in pro tanto reduction of the remaining partnership indebtedness due to defendants by the Lestz partnership; (4) commanding defendants to make restitution to plaintiff for all costs and damages sustained by plaintiff by reason of defendants' refusal to return to plaintiff his collateral security referred to in this bill.

To this pleading defendants have filed an answer in which defendants aver that the principal obligation was the bond and not the mortgage, and that this obligation was a joint and several obligation of all of the obligors bound thereby. Defendants further submit that the sheriff's sale price of $314.65 for the real estate was conclusive as to the fair market value thereof insofar as the present plaintiff is concerned.

Defendants justify their refusal to return the collateral note sought by plaintiff for the following reasons: (1) That against plaintiff defendants have the legal status of a purchaser for value of all the stock pledged as collateral; (2) because under the original obligation given to the

Lancaster Trust Company by plaintiff, defendants have rights which were not lost by the giving of subsequent renewal notes. Defendants have the right to apply the collateral now in their possession to the payment of any obligation due them by plaintiff. Defendants, therefore, purpose to assert this legal right and to appropriate the proceeds of the sale of the stock, herein mentioned, toward the payment of the indebtedness owing by plaintiff to defendants upon the balance of $37,454.17 with interest from March 19, 1937. This amount, defendants aver, greatly exceeds the value of the stock sought to be recovered by plaintiff; (3) because under an attachment ad levari debitum issued by defendants on July 19, 1933, all the interest of plaintiff in the stock sought to be recovered by plaintiff was attached by defendants for liquidation of the judgment herein referred to and entered in the Prothonotary's Office of Lancaster County to no. 697, April term, 1933; (4) because the stock here in question is the property of plaintiff; (5) because defendants are legally entitled to apply this stock toward the liquidation of the indebtedness owing by plaintiff to defendants.

Thus the issues raised by the pleadings are: (1) The liability of plaintiff to defendants on the collateral note hereinabove referred to; (2) the liability of plaintiff to defendants on the judgment entered on the bond accompanying the mortgage hereinabove referred to; (3) the right of plaintiff to have the true value of the real estate ascertained and applied on the bond and mortgage indebtedness.

*Findings of fact*

So far as definite findings of fact are necessary for the purpose of deciding this case the court now makes the following findings of fact:

1. Joseph Lestz, plaintiff, was a member of a copartnership composed of said Joseph Lestz, Samuel Lestz, and Jacob L. Lestz, trading as "Samuel Lestz Bro. & Son". This partnership on May 28, 1927, was dissolved by the death of Samuel Lestz.

2. Defendants are the liquidating trustees of certain assets of the Lancaster Trust Company, and are duly constituted such trustees under the appropriate provisions of the Banking Code of Pennsylvania.

3. On March 30, 1925, Samuel Lestz, Jacob L. Lestz, and Joseph Lestz, partners, trading as Samuel Lestz Bro. & Son, made and delivered to the Lancaster Trust Company a mortgage for the sum of $25,000, covering the premises 317 and 317½ North Queen Street, Lancaster, Pa. This mortgage was properly executed and duly recorded.

4. On March 30, 1925, the three partners composing the firm of Samuel Lestz Bro. & Son gave to the Lancaster Trust Company a bond for the sum of $25,000, to accompany the mortgage. This bond was signed "Samuel Lestz, Jacob L. Lestz, Joseph Lestz, partners trading as Samuel Lestz Bro. & Son". The bond read "to which payment well and truly to be made, we do bind ourselves, our heirs, executors and administrators, and every of them, jointly and severally, firmly by these presents".

5. This bond, given March 30, 1925, was the joint and several obligation of Samuel Lestz, Jacob L. Lestz, and Joseph Lestz.

6. On this bond, on July 19, 1933, judgment was entered against Jacob L. Lestz and Joseph Lestz, individually and as surviving partners, etc., to no. 697, April term, 1933. An attachment ad levari debitum to no. 63, August term, 1933, was issued on July 19, 1933, and under this attachment the Sheriff of Lancaster County duly attached "the goods, chattels, lands and tenements, moneys, rights and credits, legacies and interests of Jacob L. Lestz and Joseph Lestz, individually and as surviving partners now or formerly trading as Samuel Lestz Bro. & Son."

7. On this attachment, on July 20, 1933, there was attached a certain group of securities pledged by Joseph Lestz, plaintiff, originally with the Lancaster Trust Company. After closing of the trust company these securities

and a collateral note, under which note these securities had been pledged, were transferred by the Commissioner of Banking of Pennsylvania to the Fulton National Bank of Lancaster. Thereafter, the last renewal note was transferred by the bank to the liquidating trustees, defendants. To defendants, with the note, went the collateral. Thereafter, on February 2, 1937, plaintiff directed the present defendants to sell 20 shares of the capital stock of Texas Corporation, which was among the pledged collateral, for the purpose of paying a balance of $966 due on the collateral note. This stock was sold, thus paying the balance due on the note.

8. The collateral note read "as collateral security for the payment of this note, and of any other indebtedness or liability on——— part to the holder or holders hereof, now incurred or which may hereafter be contracted while such collaterals remain in the hands of the said holder or holders."

9. Defendants are holders in due course and for value of the note described in Finding no. 8, and of all collateral pledged therewith.

10. On February 15, 1937, the amount due on the mortgage formerly held by the Lancaster Trust Company, now by defendants, was the sum of $37,454.17.

11. The real estate known as 317 and 317½ North Queen Street on April 16, 1937, was sold at sheriff's sale, and purchased by defendants for the sum of $314.65.

12. The combined value of securities and land at 317 and 317½ North Queen Street is not more than enough to pay the bond claim of defendants against plaintiff.

### Discussion of questions of law and fact

The main contention of plaintiff here is that collateral security held by a creditor for an individual note cannot be appropriated by that creditor in payment of the obligation of a partnership of which the individual was a member, without a specific agreement on the part of the partner to this effect; that it is inequitable to permit a part-

nership creditor to collect his debt from the individual assets of a partner when the partnership creditor, by its lack of diligence, fails to present its claim to the liquidating partners at the time of dissolution of the partnership, of which dissolution the creditor had notice; that it is inequitable to permit a partnership creditor to so resort to the individual assets of one of the partners and thereby endeavor to collect the full sum due the partnership creditor, who, by its failure to present its claim to the legal representatives of the estate of one of the deceased partners, thus prevented any contribution to the surviving partners from the estate of the deceased partner; and that, since the individual note was paid prior to the date of November 2, 1936, when the assets were retransferred to the defendant trustees, the said trustees are not the holders in due course of the note and the collateral.

In the able brief presented by counsel for plaintiff, it is stated that there is no Pennsylvania decision directly on this point and that there are two schools of thought on this subject, one representing the New York theory, which does not allow such appropriation, and the other the Massachusetts theory, which does permit such appropriation. Counsel for plaintiff relies very strongly on the case of Heffner v. First National Bank of Huntingdon, 311 Pa. 29. At page 33 this opinion says that a pledge like any other contract, where there is any doubt as to its meaning, must be construed with some degree of strictness against the party preparing it, and it is the duty of the bank preparing the pledge to word it clearly in accordance with the meaning insisted upon by inserting words which adequately convey that meaning. The facts in the Heffner case are that Margaret Heffner, appellant, and her husband appear as co-makers on a promisory note for $2,000. The note referred to the deposit, as collateral security for payment of this or any other liability or liabilities to the holder, of certain shares of stock. The note was dated December 2, 1929. In December, 1929, A. M. Heffner, the husband, together with other persons, none of whom

was Margaret Heffner, borrowed certain sums from the appellee bank, and in each case gave their joint and several notes therefor. A. M. Heffner later became bankrupt. When Mrs. Heffner demanded the sale of the stock in payment of the $2,000 note and the return to her of the surplus, the bank replied that they were holding the stock as collateral against A. M. Heffner on his obligation as a co-maker of the notes given by him and others. The collateral deposited by Mrs. Heffner was 67 shares of P. R. R. Co. stock owned by Mrs. Heffner, the certificate being in her name. The question before the Supreme Court was the proper interpretation of the collateral pledge; whether under it the bank was authorized to apply the surplus from the proceeds of the sale of Mrs. Heffner's stock to the satisfaction of other notes, made jointly by her husband with others, and payable to the bank. It seems to the court that this case cannot be used to control the present case. Various other decisions have been cited by counsel for plaintiff including the case of Farmers Trust Company of Lancaster, to use, v. Sensenich et ux., 46 Lanc. L. R. 155. This case decided that where two persons sign a judgment note " 'as collateral security for any or all, present or future, direct or contingent liability of *mine* to said Trust Company, as said Trust Company may select or designate,' each of them are liable for their joint and several obligations but not for the individual obligations of the other", and that, "Where the wording of a collateral note is ambiguous, it will be construed strictly against the party who prepared it." None of the authorities cited by plaintiff's counsel seem to meet the facts of the present case.

In deciding the present case it must be borne in mind that Joseph Lestz, plaintiff here, became indebted to the Lancaster Trust Company as an individual on his collateral note, and also became liable to the Lancaster Trust Company as an individual and as a member of the Lestz partnership by signing the joint and several bond accompanying the mortgage. The Lancaster Trust Com-

pany and its successors were entitled to enter a separate judgment against Joseph Lestz, plaintiff here. It is not disputed that the trust company's liquidating trustees issued an attachment ad levari debitum and thus have attached the stock deposited by plaintiff as collateral. Since the right of the trustees to attach plaintiff's stock cannot be questioned, it appears that this must be an end of the case, because unquestionably plaintiff is individually liable on the bond accompanying the mortgage hereinabove referred to. In addition to this, this court feels that under the collateral note given by plaintiff to the predecessors of defendants, namely the Lancaster Trust Company, defendants have a right to hold any collateral pledged by plaintiff. The bond accompanying the mortgage clearly is a joint and several obligation. While it is true that the presumption of law is that where two or more persons enter into a contract or obligation without adding language disclosing a different intention, the undertaking is a joint and not a several one. The presumption, however, may be rebutted, and is rebutted when the obligation contains words of severance, showing that it was the intention of the parties that it should be several as well as joint. The authority for this statement is found in the decision of the Supreme Court of Pennsylvania in the case of Morrison v. American Surety Co. of N. Y., 224 Pa. 41. On page 43 the Supreme Court says that several expressions have been held to be words of severance and to change a joint obligation into one that is joint and several. Among phrases referred to in the Supreme Court opinion (page 43) are the words " 'we bind ourselves and each of our heirs;' " " 'and every of them' ". These phrases are used in the bond referred to in the present case. In addition, the Lestz bond, as above stated, contains the words "jointly and severally." It seems to this court that these words rebut the presumption arising from the joint undertaking. Thus the Lestz bond is a joint and several obligation and enforcible against any individual who signed it. In the case of Yadusky et al. v.

Shugars et al., Admrs., 301 Pa. 99, 103, the Supreme Court said that the phrase "the parties bind 'themselves, their heirs, executors and administrators' is entirely consistent with the contention of a joint and several obligation. It being such, plaintiffs might sue the obligors jointly or, as here, separately." In the present case, the bond, given by the Lestz partnership and signed by all the members of the said partnership, to the Lancaster Trust Company, bound "ourselves, our heirs, executors and administrators, and each of them, jointly and severally." In the opinion just cited, the Supreme Court said that there is no controlling difference between the expression "personally liable" and "individually liable" and that the use of the latter phrase would undoubtedly create a several obligation. A fair deduction from the Supreme Court opinion is that a several obligation would mean a personal liability and an individual liability.

Thus it would appear that defendants have a right to hold plaintiff in this bill individually and jointly liable for any and all debts of the Lestz partnership, and, in enforcing this right, may properly attach and hold individual property of plaintiff in this bill.

On behalf of plaintiff this court has not been shown any method of procedure by which the true value of the premises at 317 and 317½ North Queen Street can be ascertained and set off against the judgment claim of defendants. True it is that this real estate on April 16, 1937, was purchased at sheriff's sale by defendants for the sum of $314.65. The claim of defendants against this real estate is $37,454.17, plus the sheriff's sale costs of $314.65, making the sum of $37,768.82, which represents the cost to defendants of this real estate.

Exhibit "C. P. 13" lists the collateral pledged against Joseph Lestz's obligations as amounting in value on July 27, 1937, to $12,915.15, with a value on June 29, 1938, of $7,835.63. (Of the first figure Mrs. Essl, plaintiff's sister, claims securities totalling the sum of $5,410 and of

the second figure totalling the value of $3,648.13. Mrs. Essl's claim, however, cannot be considered in this case.)

On behalf of plaintiff the real estate at 317 and 317½ North Queen Street, on June 30, 1938, the date of the hearing in this case, was valued by one realtor at $22,000. This realtor testified that on April 16, 1937, the property was worth $26,000. Another realtor testified that on April 16, 1937, the property was worth $27,000, and on the day of the hearing was worth $20,000.

Defendants have offered the property, according to the testimony, for sale at the sum of $20,000, but have received no offers to buy at that figure.

For defendants, one realtor testified to a present value of $19,000 on June 30, 1938, and of $17,500 on April 16, 1937, the day the property was purchased by defendants at sheriff's sale. Another realtor fixed the present value at $19,000 and the value on April 16, 1937, at $17,000.

Taking the maximum value fixed by testimony of witnesses for plaintiff, the real estate was worth at the date of the sheriff's sale the sum of $27,000. Taking the maximum value of the collateral, as claimed by plaintiff, its value was $12,915.15. Taking the total of these two sums we reach the figure of $39,915.15. The claim of defendants, at the uncontradicted figure, is the sum of $37,768.42 plus interest as yet not computed. If we take other testimony of the value of the real estate we reach the figure of $17,500. Add to this the low valuation of the collateral, namely the sum of $7,835.63, and we reach a total of all assets available against liabilities at the figure of $25,535.63. At highest values there might be a surplus of assets over liabilities to the amount of $2,146.58, or .0568 percent of the debt. At low values there would be a shortage of $12,232.19, or .3239 percent of the debt. In the face of such figures, taking values at the highest figures given, no court could calculate the amount of a deficiency judgment even if such judgment legally could be entered. Plaintiff has no equities on this phase of his case.

Defendants have not been guilty of laches affecting interests of plaintiff. Plaintiff was one of the administrators of the estate of Samuel Lestz and also a copartner with Samuel Lestz. If the surviving partners desired to hold the Samuel Lestz estate for a share of partnership obligations primarily it was the duty of the surviving partners to make claim against the Samuel Lestz estate. Certainly it was not the duty of the Lancaster Trust Company to make such claim. It is not necessary to find plaintiff guilty of laches, since there are other ample grounds for dismissing the bill.

Requests for findings of fact and for conclusions of law were filed by counsel for plaintiff in this case on October 12, 1938. The case was argued on September 23, 1938.

This court must decline to consider requests for findings of fact and conclusions of law filed 19 days after the argument of the case. At the time the argument was concluded and briefs filed, this court had no notice of the intention of counsel to file requests.

Under Rule 67 of the Pennsylvania Equity Rules, requests for findings of fact and conclusions of law may be filed with the chancellor "within such time as he shall allow for the purpose." No extension of time was allowed by the court in this case. It would be impossible for this court ever to finish an opinion if requests for findings can be filed any time before the rendering of the opinion.

### Conclusions of law

1. Where an individual, as an individual and as a member of a partnership, signs a bond which recites that the obligors therein "do bind ourselves, our heirs, executors and administrators, and each of them, jointly and severally, firmly by these presents" the said individual becomes jointly and severally obligated. The lawful holder of such obligation may sue the individual jointly or separately, and may take against the individual

separately any action that may be taken against the joint obligors.

2. There is no legal method for establishing the amount of a deficiency judgment under the facts in this case.

*Decree nisi*

And now, October 28, 1938, this cause having come on to be heard on bill, answer, and testimony, it is ordered, adjudged, and decreed as follows:

1. Plaintiff's bill is dismissed.

2. The costs of this action are to be paid by plaintiff.